IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODOOR W. JANSON<br><br>            Plaintiff,<br>   v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2005-11AR; AMERICA'S SERVICING COMPANY; QUALITY LOAN SERVICE CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND DOES 1-100, Inclusive.<br><br>            Defendants. | Case No.: 14-cv-05639 JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE**<br><br>Docket No. 11 |

      Plaintiff Theodoor W. Janson seeks to prevent foreclosure of his home. He sues Defendants Deutsche Bank National Trust Company as Trustee for Morgan Stanley Loan Trust 2005-11AR ("Deutsche Bank"), America's Servicing Company ("ASC"), Quality Loan Service Corp. ("Quality Loan"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (together, "Defendants"), all of which were involved in the securitization and processing of his mortgage. Plaintiff previously filed suit against nearly identical Defendants in state court, challenging the same foreclosure on different grounds. Plaintiff's state court case was dismissed with judgment entered in Defendants' favor. Now pending before the Court is Defendants' Motion to Dismiss pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 11.) Defendants seek to dismiss Plaintiff's

1  Complaint on three grounds: res judicata, judicial estoppel, and failure to state a claim.  Having
2  carefully considered the parties' arguments, and having had the benefit of oral argument, the Court
3  GRANTS Defendants' motion without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Complaint Allegations

The following facts are based on the allegations of the Complaint and judicially noticeable documents.[1]

*Mortgage Loan and Securitization*

Plaintiff is the owner and resident of real property located at 3575 Shadow Creek Drive, Danville, CA 94506 ("the Property").  (Complaint ¶ 2.)  Plaintiff took out a $468,500 mortgage on the Property in September 2005 secured by a Deed of Trust ("the Deed").  (Dkt. No. 1-4 at 1.)  Under the terms of the Deed, Old Republic Title Company served as Trustee, First National Bank of Arizona ("First National") as Lender, and MERS as Nominee for the Lender.  (Dkt. No. 1-5 at 1-2.)

The Deed provides that the Lender may sell its interest in the Property "one or more times without prior notice to [the] Borrower."  (Dkt. No. 1-7 at 1.)  The Deed also allows for a sale that

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Here, Defendants request that the Court take judicial notice of Exhibits A-K.  Exhibits A and B are copies of Quality Loan's Notice of Sale.  Exhibits C and D are the original complaint and first amended complaint from Plaintiff's December 2012 Superior Court action.  Exhibits E is the State Court's order granting Defendants' demurrer for failure to state a claim, and Exhibit F is the subsequent judgment of dismissal.  Exhibits G-J are the dockets from Plaintiff's four bankruptcy actions.  Finally, Exhibit K is the bankruptcy schedule from Plaintiff's latest bankruptcy petition.  All of these documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Plaintiff objects to Defendants' request, alleging that Defendants seek judicial notice of "the truth of the matters asserted within those documents." (Dkt. No. 24.)  Plaintiff's argument is unavailing.  It is well established that a court may take judicial notice of records from other proceedings not to credit the truth of the allegations or facts set forth therein, but rather "only for purposes of noticing the existence of the [prior] lawsuit, the claims made in the lawsuit, and the fact that various documents were filed therein."  *McMunigal v. Bloch*, No. C 10-02765 SI, 2010 WL 5399219, at *2 (N.D. Cal. Dec. 23, 2010) (internal citation omitted).  This is exactly what the Court will do.  Therefore, the Court GRANTS Defendants' request for judicial notice of these documents.  (Dkt. No. 12.)

2

"might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note," so long as the change complies with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 1605, and California state law. (Complaint ¶¶ 25, 27 & Dkt. No. 1-7 at 1-2.) Additionally, the Deed contains an acceleration clause that limits the power of sale to the Lender in case of default; that is, if the Borrower—here, Plaintiff—defaults on the property, the Lender must execute (or have the Trustee execute on the Lender's behalf) a public notice of sale. (Complaint ¶¶ 31, 32.)

After Plaintiff took out the mortgage secured by the Deed, First National securitized its beneficial interest in the Deed. (*Id.* ¶ 74.) As a part of that securitization, in August 2009, MERS assigned its beneficial interest (an "Assignment") in the Deed to Deutsche Bank. (Dkt. No. 1-8.) Deutsche Bank was the Trustee for the Trust-2005-AR11 ("the Trust") that held Plaintiff's loan and other securities. (Complaint ¶ 25.) MERS recorded a second Assignment to Deutsche Bank on November 3, 2011. (Dkt. No. 1-9.) A Pooling and Services Agreement ("PSA") governed both Assignments; Plaintiff alleges that he is a third-party beneficiary to the PSA. (Complaint ¶ 22.) Plaintiff also alleges that "robo-signers" David Seybold and Brenda Mutua signed the Assignments to Deutsche Bank. (*Id.* ¶ 62.)

Under the terms of the PSA, any Assignment must occur and be recorded within 90 days of the Trust closing. (*Id*. ¶ 40.) In addition to setting out requirements for Assignments, the PSA established servicing obligations and named Wells Fargo Bank ("Wells Fargo") as the Loan Servicer. (*Id.* ¶¶ 28, 56.) After the Assignments, Deutsche Bank transferred servicing rights on the loan from Wells Fargo to ASC; Plaintiff alleges that Defendants did not give him proper notice of that transfer. (*Id.*)

Defendants and others recorded three Notices of Default on the Property—both before and after the securitization of Plaintiff's loan. (*Id.* ¶¶ 11, 13, 16.) NDEX West, LLC (a prior substitute Trustee for Old Republic Title Company) recorded the first two Notices of Default on July 7, 2009, and March 24, 2010. (*Id.* ¶¶ 11, 13.) NDEX West, LLC later rescinded these notices. (*Id.*) On November 7, 2011, Wells Fargo, acting as Attorney-in-Fact for Deutsche Bank, substituted Quality Loan as Trustee to the Deed. (Dkt. No. 1-10.) Quality Loan recorded the third Notice of Default on

3

November 7, 2011. (Dkt. No. 1-11.) The Notice of Default failed to state an amount due. (Complaint ¶ 18.) Additionally, Plaintiff alleges that the individual who signed the Notice of Default was an employee of Deutsche Bank or ASC, who was acting without authority to sign on behalf of Quality Loan. (*Id.* ¶ 72.) On February 2, 2012, Quality Loan recorded a Notice of Trustee's Sale ("Notice of Sale"). (*Id.* ¶ 17.)

*Prior State Court Action*

In December of 2012, Plaintiff filed an action in Contra Costa County Superior Court ("Superior Court") challenging the foreclosure of the Property. (Dkt. No. 12-1 at 8-11.) In that case, Plaintiff brought claims against Deutsche Bank as the beneficiary of his Deed, Quality Loan as Trustee and foreclosing entity on his loan, and ASC as the loan servicer. (*Id*. at 8-9.) In the original complaint, Plaintiff sued for Negligence, Negligent Misrepresentation, Fraud under California Civil Code Section 3294(c)(3), Breach of Contract, Promissory Estoppel, and Violations of California Business and Professions Code Section 17200. (*Id.* at 15-23.) After amending his complaint, Plaintiff eliminated these claims, keeping only two claims under the California Homeowners Bill of Rights ("HBOR"). (*Id.* at 31-33.) Plaintiff sued under California Civil Code Sections 2923.5, 2923.55, and 2924, which set forth procedural requirements that servicers must follow before recording a notice of default on a mortgagee's property. (*Id.*)

To support these claims, Plaintiff asserted that after receiving the Third Notice of Default in November 2011, he called a representative from ASC and gave a rough estimate of his financial situation. (*Id.* at 30-31.) The representative told him he was not eligible for a loan modification. (*Id.* at 31.) Plaintiff did not seek another modification before Quality Loan recorded a Notice of Sale against the property in February of 2012. (*Id.*) Plaintiff alleged that Defendants' actions deprived him of a good faith loan modification review and the requisite due process for a non-judicial foreclosure. (*Id.* at 31-33.) Plaintiff specifically alleged that he was deprived of statutory rights that HBOR guarantees—that is, the rights to financial assessments, foreclosure options, follow-up meetings, a written summary of the status of his mortgage, and contact with the Department of Housing and Urban Development in the days leading up to the Third Notice of Default. (*Id.* at 32.) Thus, Plaintiff argued, Defendants had no right to foreclose. (*Id.* at 31.)

Plaintiff sought a declaration that Defendants' attempt to foreclose on the property was wrongful, an injunction enjoining the foreclosure on his home, compensatory damages, statutory damages, and attorneys' fees. (*Id.* at 33-34.) Defendants ASC and Deutsche Bank filed a demurrer. (*Id.* at 55.) On December 30, 2013, the Superior Court sustained Defendants' demurrer "without leave to amend for failure to state facts sufficient to constitute a cause of action" as to both HBOR claims and entered judgment in Defendants' favor. (*Id.* at 56.)

*Prior Bankruptcy Proceedings*

On March 5, 2012, approximately two months after bringing his state court action, Plaintiff filed his first petition for bankruptcy. (Dkt. No. 12-2 at 2.) The bankruptcy court dismissed Plaintiff's case on August 14, 2012 for failure to make plan payments. (*Id*. at 8.) Plaintiff filed a second petition for bankruptcy one week later, but the court dismissed his second petition for case deficiencies. (*Id.* at 11, 14.) Plaintiff again filed for bankruptcy on February 24, 2014, and this case was also dismissed for deficiencies. (*Id.* at 17, 22-23.) Plaintiff filed his most recent bankruptcy petition on June 13, 2014. (*Id.* at 26.) The court dismissed his case on October 22, 2014 for defaulting on Chapter 13 payments. (*Id.* at 33.)

## II. Present Federal Complaint

On December 29, 2014, one year after the entry of his adverse judgment in state court, Plaintiff initiated this action in federal court to challenge the same foreclosure. (*See* Complaint.) In the eight-count Complaint, Plaintiff makes claims for breach of express agreement, breach of implied agreement, wrongful foreclosure, slander of title, and violations of California Civil Code Section 1788, 15 U.S.C. §§ 1692 and 1601, 12 U.S.C. § 2605, and California Business and Professions Code Section 17200. (*Id* ¶ 1.)

The facts underlying each cause of action, particularly the state law claims, substantially overlap. The gravamen of Plaintiff's Complaint is that the foreclosure is wrongful because Defendants have no lawful interest in his Deed. (*Id.* ¶ 18.) Plaintiff alleges four primary defects in his loan process: first, that Defendants broke the chain of title to the Deed through errors in the securitization process; second, that Defendants failed to give notice of a change in Loan Servicer

rights; third, that the Notice of Sale was invalid; and finally, that Defendants violated additional federal notice and disclosure requirements. (*Id.*)

*Securitization Defects*

Plaintiff brings claims for breach of express agreement, breach of implied agreement, wrongful foreclosure, slander of title, and violations of California Business and Professions Code Section 17200, arising out of purported errors in the securitization process. He contends these errors deprived Defendants of legal authority to foreclose on the Property.

Plaintiff contends that MERS violated the PSA by failing to record the Assignments to Deutsche Bank in accordance with the PSA. (*Id.* ¶ 36.) The PSA requires any Assignments to be recorded within 90 days of the Trust closing. (*Id.*) Here, the Trust closed on December 29, 2005, but the Assignments were not recorded until 2009 and 2011. (*Id.* ¶¶ 41-42.) Plaintiff asserts that due to this timing gap, there was a break in the chain of title to the Property; as a result, Deutsche Bank is not a legitimate successor in interest to the Deed, which divests Deutsche Bank of any authority over the Deed, and invalidates its attempted foreclosure. (*Id.* ¶¶ 36, 41, 42.)

Plaintiff further argues that because of this securitization-related assignment error, none of the Defendants had authority to demand mortgage payments after the Trust closed on December 29, 2005; any payments collected thereafter were in excess of what Plaintiff owes and outside the terms of Plaintiff's mortgage. (*Id*. ¶¶ 45, 63.)

Alternatively, Plaintiff alleges that the original Lender, First National, lost its beneficial interest to the Deed after its securitization in 2005. (*Id.* ¶ 74.) From Plaintiff's perspective, because First National had no interest in the Deed, MERS had no authority as Nominee for First National to transfer the interest in the Deed to Deutsche Bank in either the 2009 or the 2011 Assignment, and therefore Deutsche Bank lacked authority to enforce the Deed. (*Id.*) Plaintiff also argues that the Assignments to Deutsche Bank are invalid because "robo-signers" David Seybold and Brenda Mutua signed them. (*Id.* ¶ 62.)

*Servicer Rights Defects*

The second broad set of allegations arises out of purported defects in the transfer of servicing rights to Plaintiff's loan. Plaintiff brings claims for breach of express agreement, wrongful foreclosure, and RESPA violations based on these defects. (*Id.* ¶¶ 57-58.)

Plaintiff asserts that when Deutsche Bank transferred servicing rights to ASC without giving him proper notice, Deutsche Bank violated RESPA, the PSA, and the Deed. (*Id.* ¶¶ 28, 56.) According to Plaintiff, this lack of proper notice invalidates the initiation of the foreclosure because ASC had no authority to authorize Quality Loan to record foreclosure documents, let alone for those documents to lead to foreclosure. (*Id.* ¶¶ 57-58.) Plaintiff also contends that without notice of the transfer, he had no way to know which party to submit mortgage payments to, so Defendants' demands for payment cannot substantiate a foreclosure. (*Id.* ¶ 59.)

*Notice of Default Defects*

Plaintiff also brings claims for breach of express agreement, wrongful foreclosure, and slander of title based on allegations that errors in the Third Notice of Default rendered the foreclosure invalid.

Due to the alleged defects in the Assignment to Deutsche Bank and the transfer of servicing rights to ASC, Plaintiff argues Deutsche Bank and ASC had no authority to name Quality Loan the Trustee, and therefore Quality Loan lacked the authority to record a Notice of Default against the Property. (*Id.* ¶ 33.) Thus, because neither the rightful Lender nor Trustee executed the Third Notice of Default, the foreclosure was wrongful. (*Id.*)

Plaintiff also contends that the Notice of Default was inherently invalid because it failed to state an amount due and the individual who signed it lacked authority to represent Quality Loan. (*Id.* ¶¶ 18, 72.)

*Additional Federal Statutory Claims*

Finally, Plaintiff asserts Defendants' actions violate two federal statutes: the Fair Debt Collection Practices Act ("FCDPA"), 15 U.S.C. § 1692; and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. These statutes set out procedural requirements for debt collectors and lenders, respectively. *See* 15 U.S.C. §§ 1692; 1601.

Plaintiff alleges that Defendants are debt collectors under the FCDPA, that MERS's Assignments of the Deed constitute debt collection activity, and that these Defendants violated the notice requirements of the FDCPA. (*Id.* ¶¶ 86-87.)

Plaintiff contends that Defendants violated TILA because they failed to disclose information regarding adjustable rate mortgages (Plaintiff's mortgage was a fixed rate loan). (*Id.* ¶ 116.)

Based on the above allegations, Plaintiff seeks a declaration that Defendants have no authority to foreclose on his home, an injunction enjoining the foreclosure of his home, compensatory damages, statutory damages, punitive damages, and attorneys' fees. (Dkt. No. 1-3 at 3.)

Plaintiff consented to proceed before a Magistrate Judge on December 29, 2014; Defendants consented on January 22, 2014. (Dkt. Nos. 4, 17.) Defendants ASC, Deutsche Bank, and MERS filed the instant motion to dismiss under Rule 12(b)(6) on January 16, 2015, and Defendant Quality Loan joined the motion on January 20. (Dkt. Nos. 12, 14.) The Court heard oral argument on February 26, 2015. As of the hearing, the foreclosure has not occurred. (Dkt. No. 31 at 9.) Plaintiff still resides at the Property. (*Id.*; Complaint ¶ 2.)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving

party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662, 663-64 (2009).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants seek to dismiss Plaintiff's Complaint in its entirety on three grounds: first, because claim preclusion, also known as res judicata, bars Plaintiff from asserting claims that have been or could have been litigated; second, because the doctrine of judicial estoppel prevents Plaintiff from making arguments he failed to assert in prior proceedings; and third, because even if the Complaint is properly before the Court, each cause of action fails to state a claim upon which relief may be granted. For the reasons below, the Court concludes that claim preclusion bars all of Plaintiff's claims.

**I.     Claim Preclusion Bars Plaintiff's Claims**

A.     *Choice of Law*

A defendant may raise the affirmative defense of claim preclusion by motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984). For the following reasons, the Court has determined that California claim preclusion principles, not federal, apply to the instant matter.

9

The Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. To effectuate this provision and extend its reach to the federal courts, Congress enacted 28 U.S.C. § 1738, which provides that the "Acts, records, and judicial proceedings" of "any State . . . of the United States . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." Section 1738 requires that federal courts "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (citing to *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)). Accordingly, because this case involves a prior action in California state courts, the Court applies California law on claim preclusion.[2] In California, claim preclusion "precludes a party from relitigating (1) the same claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the merits in a prior action." *Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148-49 (9th Cir. 2010) (internal citation omitted).

B.   *Analysis*

As set forth below, Plaintiff's claims meet all three elements of claim preclusion under California law. Essentially, Plaintiff could have litigated the claims made here in his prior state court action; having failed to do so, he may not bring a second action against Defendants to raise them now.

1.   The Same Claim

Under California state law, "[t]wo different causes of action are the same claim if they rise from the same invasion of a primary right." *Adam Bros. Farming*, 604 F.3d at 1149 (internal citation and quotation omitted). A "primary right" is "the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004). Thus, the underlying harm—not the cause

---

[2] Some federal courts have applied the federal law formulation of claim preclusion to cases involving prior state court actions. *See, e.g. Green v. Univ. of San Francisco,* No. C 06-3321JF(PVT), 2006 WL 3545024, at *2 (N.D. Cal. Dec. 8, 2006). Defendants have done so as well. (Dkt. No. 11 at 12-13.) As *Migra* makes clear, however, the proper approach is to apply state law. 465 U.S. at 81.

of action asserted—defines the primary right. *Adam Bros. Farming*, 604 F.3d at 1149; *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975). A "plaintiff is not permitted to maintain successive actions for the same injury by alleging different acts . . . on the part of the defendant." *Panos v. Great W. Packing Co.*, 21 Cal. 2d 636, 639 (1943).

In California, a wrongful foreclosure constitutes an injury to a single primary right, regardless of the legal theory challenging the foreclosure. *Prado v. Quality Loan Serv. Corp.*, No. C-13-4536, 2014 WL 46634, at *1 (N.D. Cal. Jan. 6, 2014) (holding that the plaintiff's two cases raised the same claims because she was seeking "a remedy for the same injury in both cases—in essence, a wrongful foreclosure"). Thus, courts in this District have repeatedly recognized that, under California law, plaintiffs seeking to set aside a foreclosure may not relitigate their claims in subsequent actions, even when the second lawsuit asserts different causes of action or challenges different aspects of the loan or foreclosure process. *See, e.g.*, *Lodin v. Bank of Am., N.A.*, No. 13-04847 JSC, 2014 WL 296927, at *1 (N.D. Cal. Jan. 27, 2014) (holding that claim preclusion barred the plaintiff's breach, mail fraud, TILA, and RESPA claims challenging the securitization of her mortgage because the claims could have been raised in state court litigation alongside HBOR and UCL claims); *Patel v. U.S. Bank, N.A.*, No. 13-1625 YGR, 2013 WL 5947377, at *2 (N.D. Cal. Nov. 5, 2013) (holding that claim preclusion barred the plaintiffs' TILA claim because the violation could have been "discovered prior to the filing of the state court complaint"); *Barnes v. Homeward Residential, Inc.*, No. 13-3227 SC, 2013 WL 5217393, at *4 (N.D. Cal. Sep. 17, 2013) (holding that claim preclusion barred Plaintiff's federal claims challenging the foreclosure proceedings against her property because of her previous assertions in state court that Defendants breached the Deed of Trust). In short, when a plaintiff has already filed an action challenging the defendants' authority to foreclosure, he may not file another seeking to prevent the foreclosure on different grounds.

Importantly, claim preclusion bars all matters "that *could* have been litigated"—that is, "claims in existence when the original complaint was filed" or claims that could have been brought earlier "with diligence." *Allied Fire Protection v. Diede Constr. Inc.*, 127 Cal. App. 4th 150, 155 (2005) (internal citation and quotation omitted). Claim preclusion therefore applies to all claims related to a set of facts litigated in an earlier action. *Id*.

11

California courts have carved a relevant exception to this rule: claim preclusion does not bar subsequent claims where a defendant's fraud or misrepresentation—even if innocent—prevented plaintiffs from discovering those claims in the previous action. *Gamble v. Gen. Foods Corp.*, 229 Cal. App. 3d 893, 902 (1991). But unless the complaint plausibly alleges that the plaintiff was unable to discover a fact because it did not exist at the time of the prior action or because of a defendant's fraud or misrepresentation, claim preclusion applies to all actionable facts that could have been discovered with diligence during the prior proceeding. *Allied Fire Protection*, 127 Cal. App. 4th at 156-57.

For example, in *Rodriguez v. Bank of New York Mellon*, No. 13cv1830-GPC-BLM, 2014 WL229274, at *5-6 (S.D. Cal. Jan. 17, 2014), the court found that claim preclusion barred the plaintiff's claims even though the second action filed in federal court involved different facts and legal theories. In the state court, the plaintiff had brought various causes of action challenging foreclosure, essentially arguing that the defendants had "clouded" title to the plaintiff's property. *Id.* at *2. The later-filed federal complaint included causes of action for breach of contract, negligence, violation of the FDCPA, the California Unfair Competition Law, and quiet title. *Id.* The court found that the claims all boiled down to the same "primary right": the plaintiff's attempt to seek relief for the defendant's conduct with respect to her mortgage and foreclosure process. *Id.* at *6. The court so concluded given that the federal claims "ar[o]se from the same foreclosure process and documents as the state court action[.]" *Id.* The court emphasized that the same right is at issue even if a "plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery." *Id.* at *5 (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)); *cf. Sepehry-Fard v. Nationstar Mortg. LLC*, No. 14-CV-03218-LHK, 2015 WL 332202, at *11 (N.D. Cal. Jan. 26, 2015) (holding that claim preclusion did not bar plaintiff's FDCPA and mail fraud claims, though other foreclosure-related claims were barred, where plaintiff specifically alleged that he did not learn the facts pertaining to these claims until one year after the state court case ended).

So it is here, where the same primary right underlies Plaintiff's two cases. In his previous action, Plaintiff brought claims under the HBOR alleging that the foreclosure on his home was wrongful because of Defendants' failure to provide a good faith loan modification review. (Dkt. No.

12-1 at 31-33.) Now, Plaintiff challenges the very same foreclosure, but bases this challenge on errors in the securitization process, the transfer of loan servicing rights, and the Notice of Sale. (*See generally* Complaint.) In both cases, Plaintiff challenges the conduct of the entities responsible for servicing his loan and seeks injunctive relief preventing foreclosure, legal fees, and compensatory and statutory damages. In short, although he presents new legal theories in federal court and focuses on facts that were not at issue in his earlier complaint, Plaintiff's present claims are still based on the alleged wrongful foreclosure—the same injury to the same primary right as in his state court action. *See Prado*, 2014 WL 46634, at *1.

While Plaintiff alleges different facts to support the claims in his present case, Plaintiff *could* have alleged all of these facts, and therefore these claims, in his state court case. Plaintiff concedes that all of the allegations he makes against Defendants here occurred before he filed his state court action. (Dkt. No. 31 at 5; c*ompare* Complaint, *with* Dkt. No. 12.) The facts that gave rise to the instant Complaint thus existed at the time of the earlier suit: Plaintiff's loan was securitized; the servicing rights were transferred; and the Assignments, Notices of Default, and Notice of Sale were all recorded. Therefore, Plaintiff could have litigated these claims alongside his HBOR claims in state court.

For example, Plaintiff's state court action sought to set aside his foreclosure and challenged the validity of the Notice of Sale. (Dkt. No. 12-1 at 31.) This is exactly what the Complaint does here; Plaintiff merely alleges different facts and asserts different legal theories to do so. *See Rodriguez*, 2014 WL 229274, at *5-6 (holding that two cases seeking to set aside foreclosure are addressing the same primary right whether or not plaintiff presents different facts and/or legal theories). Similarly, some of Plaintiff's instant claims—*e.g.*, the wrongful foreclosure and FDCPA causes of action—challenge the lack of notice Defendants provided to Plaintiff. (*See, e.g.*, Complaint ¶ 88.) Since Plaintiff has already challenged the sufficiency of notice from Defendants under the HBOR in state court, it follows that he was aware of potential notice and process issues relating to his mortgage and foreclosure documents. Moreover, prior to amending his state court complaint, Plaintiff brought claims against Defendants for Negligence, Negligent Misrepresentation, Fraud under California Civil Code Section 3294(c)(3), Breach of Contract, Promissory Estoppel, and

13

Violations of California Business and Professions Code Section 17200. (Dkt. No. 12-1 at 24-25.) Taken together, having alleged that these Defendants were engaged in unlawful and fraudulent conduct with respect to his loan, and attempting a wrongful foreclosure, Plaintiff had information sufficient to put a reasonable person on notice that Defendants may have harmed him; he could have discovered errors in the securitization, servicing rights transfer, and/or Notice of Sale with due diligence. Thus, all of the facts giving rise to the claims in the instant complaint were actionable when Plaintiff litigated his state court action.

Plaintiff's insistence that claim preclusion does not apply because he could not have litigated the present claims in his state court action is unpersuasive. First, Plaintiff contends that the facts here were undiscoverable due to Defendants' "aforementioned wrongful acts and concealment." (Dkt. No. 21 at 14.) While a defendants' fraud and concealment of facts may excuse a plaintiffs' obligation to bring all potential claims, *see Gamble*, 229 Cal. App. 3d at 902, the plaintiff must allege sufficient facts to plausibly establish that such concealment prevented him from discovering the defendant's wrongdoing. But here, Plaintiff fails to cite specific instances of concealment as to the instant facts, and when pressed at the hearing to identify a particular fact that could not have been discovered due to Defendants' concealment, Plaintiff was unable to do so. (Dkt. No. 31 at 4-8.) In his state court complaint, Plaintiff identified Defendants in their roles as Beneficiary, Trustee, and Servicer, indicating he was aware of their involvement in his mortgage and foreclosure process. (Dkt. No. 12-1 at 28-29.) And while Plaintiff asserts that Defendants concealed the identity of Defendant ASC such that Plaintiff was unable to properly sue it or discover facts about it (Dkt. No. 31 at 6-7), Plaintiff's state court claims contradict this assertion. Plaintiff previously sued ASC for its failure to fulfill statutory lending requirements, which required Plaintiff to know that ASC was either his loan servicer or somehow involved in the processing of his mortgage. (Dkt. No. 12-1 at 30-31.)

Plaintiff's second argument—that he could not have previously discovered the facts underlying the instant complaint because his former attorney did not conduct a sufficient investigation (Dkt. No. 31 at 4, 6)—is likewise unavailing. Specifically, Plaintiff contends that he did not know about the errors in securitization or the servicing rights transfer during the state action and that his lawyer did not and could not discover them without hiring a forensic auditor as Plaintiff did

14

for the instance case. (*Id.* at 6, 8.) But the test is not whether Plaintiff *actually* knew of the claims while the state case was pending; it is whether he *could* have known of the claims. *See Allied Fire Protection*, 127 Cal. App. 4th 150 at 155. Plaintiff did not provide a reason why he could not have hired a forensic auditor prior to filing his state court suit. (*See* Dkt. No. 31.) Thus, his previous attorney's failure to research the facts with diligence, *e.g.*, by diligently exploring the evidence or hiring an auditor, actually supports the idea that they should have been litigated in his state court action. (*Id.* at 8.) *Cf. Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (under California's rules of discovery, "a plaintiff discovers [a] cause of action when he at least suspects a factual basis . . . for its elements . . . [A plaintiff] cannot wait [for the specific facts necessary to establish a cause of action] to find him . . . he must go find them himself if he can and file suit if he does.").

In short, the claims here are based on alleged errors in Plaintiff's mortgage process that existed and could have been discovered by the time he filed his state court action, and that caused him the same harm—foreclosure and legal fees—as those in his prior action. The two sets of claims therefore stem from the same primary right and constitute the same claim under California law.

### 2. The Same Party

California requires the parties in the case at bar to be identical to or in privity with the parties to prior litigation for claim preclusion to apply. *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896-97 (2002). Privity may established by "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1069 (1998) (internal citations omitted). Privity "has also been expanded to refer to . . . a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." *Id.* at 1069-70. For example, in the context of mortgage cases, courts in this District have found that the holders of a beneficial interest in a Deed are in privity with the trustees of a Deed because they have "sufficient commonality of interests." *Barnes*, 2013 WL 5217393, at * 3 (internal citation and quotation omitted).

Here, the parties are the same. Janson is the plaintiff in both the state and federal cases. (Dkt. Nos. 1, 12-1 at 8.) Defendants are identical in both cases but for Defendant MERS. (*Id.*) However, MERS qualifies as the "same party" under California law because the privity requirement is met. Although Plaintiff did not name MERS in his state court action, as the nominee for the original Lender, MERS is in privity with Defendants Deutsche Bank, ASC, and Quality, the respective Beneficiary, Servicer, and Trustee of his loan. *See Barnes*, 2013 WL 5217393, at *3. Plaintiff is suing all of the Defendants because of their relationship to his mortgage; thus, their interests "are so closely aligned as to be virtually representative." *Id.* The parties in the two cases are therefore the same, satisfying the second element of claim preclusion under California law.

### 3. Final Judgment on the Merits

The third element of claim preclusion is also met here: Plaintiff's state court action resulted in a final judgment on the merits. In California, a state court's order sustaining a general demurrer constitutes a final judgment on the merits. *See McKinney v. Cnty. of Santa Clara*, 110 Cal. App. 3d 787, 794 (1980) (holding "[a] judgment on a general demurrer will have a preclusive effect on a new action in which the complaint states the same facts which were held not to constitute a cause of action on the former demurrer"); *see also Goddard v. Sec. Title Ins. & Guar. Co.*, 14 Cal. 2d 47, 52 (1939) ("A judgment given after the sustaining of a general demurrer on a ground of substance . . . may be deemed a judgment on the merits.").

Courts in this District have routinely held that sustaining a general demurrer and dismissing a case with prejudice constitutes a final judgment on the merits under California state claim preclusion law. *See O'Connor v. Nationstar Mortg., LLC*, No. 13-CV-05874 NC, 2014 WL 1779338, at *8 (N.D. Cal. May 5, 2014) (finding the requirement of final judgment on the merits satisfied by the state court sustaining defendants' demurrers to the complaint without leave to amend); *Brambila v. Wells Fargo Bank*, No. 12-CV-04224 NC, 2012 WL 5383306, at *3 (N.D. Cal. Nov. 1, 2012) (state court's dismissal of plaintiff's case following a failure to amend the complaint to state a claim constituted a final judgment on the merits); *Moore v. Navarro*, No. C 00–03213, 2004 WL 783104, at *6 (N.D. Cal. Mar. 31, 2004) ("the judgment sustaining the demurrer to [plaintiff's] state court action

was a judgment on the merits because it was an adjudication that the facts alleged could not state a cause of action.").

Here, the Superior Court dismissed Plaintiff's state court complaint with prejudice after sustaining Defendants' general demurrer. (Dkt. No. 12-1 at 56, 58-59.) It was therefore a final judgment on the merits. *See McKinney*, 110 Cal. App. 3d 787 at 794; *see, e.g.*, *O'Connor*, 2014 WL 1779338, at *8; *Brambila*, 2012 WL 5383306, at *3. Thus, Plaintiff's previous state court dismissal constitutes a final judgment on the merits for the purposes of claim preclusion.[3]

\* \* \*

In sum, all three elements of claim preclusion are present here. The Complaint alleges misconduct that Plaintiff knew or could have known before filing his previous action in Superior Court, all of which relates to the same primary right: the allegedly wrongful foreclosure on his Property. The privity requirement is met because the parties, as pleaded, are effectively identical to the parties in the previous action. And the state court's entry of judgment after sustaining Defendants' demurrer constitutes a final judgment on the merits of Plaintiff's claims. Therefore, claim preclusion bars all of Plaintiff's claims against Defendants in the present action.

## II. Leave to Amend

If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

At oral argument, Plaintiff failed to identify any facts, in the Complaint or otherwise, that he could not have discovered before he filed the state court action. In response to the Court's questioning, Plaintiff returned repeatedly to his lament about his previous attorney. As the alleged failures of his previous attorney are not a bar to claim preclusion, Defendants' motion to dismiss shall be granted without leave to amend. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th

---

[3] Plaintiff's argument that there was no final judgment in his bankruptcy proceedings (Dkt. No. 21 at 13) is a red herring. It is his previous state court action against Defendants—not his bankruptcy filings—that bar his present claims under claim preclusion. (Dkt. No. 12.)

Cir. 1999) (a complaint may be dismissed with prejudice where plaintiff fails to identify any additional fact he could allege to save his complaint), *superseded by statute on other grounds*.

## CONCLUSION

For the reasons described above, claim preclusion bars Plaintiff's claims. Accordingly, the Court GRANTS Defendants' motion to dismiss. Given Plaintiff's failure to allege plausible facts supporting his inability to make the present claims in his earlier state court action, the dismissal is with prejudice.

The Clerk of Court shall close this case.

This order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: March 18, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE